DECISION
{¶ 1} Relator, Vernon Jackson, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Department of Youth Services, to reinstate him from a layoff list to a unit manager position at Scioto Juvenile Correctional Facility, with full back pay from October 10, 2003.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, and based upon an independent review of the record, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law. In accordance with the magistrate's decision, relator's requested writ of mandamus is denied.
Writ of mandamus denied.
French and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Vernon Jackson, :
Relator, :
v. : No. 04AP-1111
Department of Youth Services et al., : (REGULAR CALENDAR)
 Respondents. :
 MAGISTRATE'S DECISION Rendered on May 20, 2005 Kennedy, Reeve Knoll, Nicholas E. Kennedy and Brad E. Bennett, for relator.
Jim Petro, Attorney General, and Timothy A. Lecklider, for respondents.
IN MANDAMUS
 {¶ 4} In this original action, relator, Vernon Jackson, requests a writ of mandamus ordering respondent Department of Youth Services ("DYS") to reinstate him from a layoff list to a unit manager position at Scioto Juvenile Correctional Facility ("SJCF") encumbered by Phillip S. Born pursuant to a settlement agreement between Born and DYS.
Findings of Fact:
 {¶ 5} 1. Effective January 14, 2003, Born was removed by DYS from his classified exempt position of operations manager at SJCF due to misconduct. Thereafter, Born filed a timely appeal of his removal with the State Personnel Board of Review ("SPBR").
 {¶ 6} 2. On or about August 4, 2003, DYS notified relator that he would be laid-off, effective September 6, 2003, due to the abolishment of his unit manager position at the Riverside Juvenile Correctional Facility. As a practical matter, that facility was to be closed.
 {¶ 7} 3. Pursuant to Ohio Adm. Code 123:1-41, relator unsuccessfully attempted to exercise his "bumping" rights at facilities within the layoff jurisdiction, as defined at Ohio Adm. Code 123:1-41-13.
 {¶ 8} 4. Subsequent to September 6, 2003, relator was placed on a layoff list pursuant to R.C. 124.327 and Ohio Adm. Code 123:1-4-16 with the effect that he retained reinstatement rights to the unit manager classification in the layoff jurisdiction for a period of one year from the date of his layoff.
 {¶ 9} 5. Relator was first on the recall list due to his retention point rating.
 {¶ 10} 6. A hearing before SPBR regarding Born's appeal of his removal was scheduled for September 8, 2003. On that date, Born and DYS verbally reached a settlement and the parties moved SPBR for a continuance of the hearing pending submission of a fully executed written agreement. SPBR granted the continuance and ordered that a validly executed written agreement be filed with SPBR no later than October 10, 2003, or the hearing would be rescheduled.
 {¶ 11} 7. Born and DYS subsequently executed a settlement agreement and release. The three page agreement states in part:
[One] The Department shall rescind Mr. Born's discharge, effective October 6, 2003, and shall modify the discharge to a reduction[.] * * *
[Two] Mr. Born hereby is reassigned from his position as an operations manager to a unit manager, effective October 6, 2003. Said reduction is a pay range 10 position. * * *
* * *
[Seven] This agreement is a compromise settlement of disputed claims, the validity, existence or occurrence of which are expressly denied by the Department. This agreement is not to be construed as an acknowledgement, admission or finding of liability, fault or wrongful act by any party hereto. All parties hereto maintain that their actions have been in full conformity with the law.
 {¶ 12} 8. Born also released DYS from any liability resulting from his discharge and agreed to dismiss his SPBR action. Born also waived all right to back pay or benefits between the date of his discharge and the date of his return to DYS.
 {¶ 13} 9. Born also executed a "Last Chance Agreement" with DYS. The last chance agreement recites that DYS agreed to:
* * * Reinstate Mr. Born's employment with the Ohio Department of Youth Services, reassigning Mr. Born from his position as an operations manager to a unit manager effective October 6, 2003.
 {¶ 14} 10. A DYS Personnel Action form was completed by DYS in October 2003. On the form, DYS placed an "X" in a box indicating a "reinstatement from separation." In the blank space for "remarks," DYS wrote: "Removal effective 1/14/03 changed to Demotion — Settlement attached."
 {¶ 15} 11. Effective October 6, 2003, Born returned to work at SJCF as a unit manager.
 {¶ 16} 12. Upon learning of Born's assignment to a unit manager position at SJCF, relator filed an appeal with SPBR on October 20, 2003, claiming that his recall rights had been violated.
 {¶ 17} 13. On October 14, 2004, SPBR dismissed relator's appeal for lack of jurisdiction over the subject matter of the appeal.
 {¶ 18} 14. On October 12, 2004, relator, Vernon Jackson, filed this mandamus action.
Conclusions of Law:
 {¶ 19} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 20} R.C. 124.327(B) states:
An employee who is laid off retains reinstatement rights in the agency from which the employee was laid off. Reinstatement rights continue for one year from the date of the layoff. During this one-year period, in any layoff jurisdiction in which an appointing authority has an employee on a layoff list, the appointing authority shall not hire or promote anyone into a position within that classification until all laid-off persons on a layoff list for that classification who are qualified to perform the duties of the position are reinstated or decline the position when it is offered.
Supplementing the statute, Ohio Adm. Code 123:1-41-16(G) states:
Prohibition of movement into classifications for which recall lists exists. In any layoff jurisdiction in which the appointing authority has any employee on a recall list, the appointing authority shall not hire or promote into the classification or the classification series subject to the recall list. An appointing authority may reassign or transfer employees within a classification and within the layoff jurisdiction for which a recall list exists unless the director determines the reassignment or transfer circumvents the recall process. * * *
Ohio Adm. Code 123:1-47-01(A) sets forth definitions applicable here:
(20) "Classification" — Means a group of positions sufficiently similar in respect to duties, responsibilities, authority, and qualifications so that the same descriptive title may be used for each, the same pay range assigned, and the same examinations conducted.
(21) "Classification change" — Means a change in an employee's classification title which results in a promotion, demotion, lateral move to a different classification with the same pay range, or reassignment to another classification.
* * *
(72) "Reassignment" — Means the act of changing the classification assigned to an employee. This may be the result of change in or addition of classifications to the classification plan, or by action of the department of administrative services, in assigning a different classification title as a result of a position audit or classification change.
* * *
(74) "Reduction" — Means a change of the classification held by an employee to one having a lower base pay range, a change to lower step within a salary range, or any decrease in compensation for an employee. * * *
 {¶ 21} DYS claims that the effect of the settlement agreement with Born was to rescind Born's removal and to modify it to a reduction in position with the result that Born was reassigned to the unit manager position at SJCF.
 {¶ 22} On the other hand, relator claims that the effect of the settlement agreement was that DYS rehired Born to the position of unit manager at SJCF.
 {¶ 23} The magistrate finds that Born was not rehired. The magistrate agrees with DYS that the settlement agreement rescinded Born's removal and modified it to a reduction in position with the result that Born was reassigned to the unit manager position at SJCF.
 {¶ 24} Relator argues that Born was not reassigned to the unit manager position at SJCF even though Ohio Adm. Code 123:1-47-01(A)(72) defines "reassignment" as a "classification change," and Ohio Adm. Code123:1-47-01(A)(21) defines "classification change" as a "change in an employee's classification title which results in a * * * demotion." According to relator, Born could not have been reassigned to the unit manager position because he did not hold the operations manager position on the date of his reinstatement and because "there were no operations manager vacancies for him to be `reinstated' into." (Relator's brief, at 10.) Based upon that analysis, relator concludes that Born was rehired into the position of unit manager rather than reassigned to that position. The magistrate disagrees with relator's analysis and finds it to be fatally flawed.
 {¶ 25} Relator's analysis effectively ignores that DYS agreed to rescind the discharge and to modify the discharge to a reduction. It further ignores the settlement agreement's provision that Born "is reassigned from his position as an operations manager to a unit manager, effective October 6, 2003." Relator's argument pivots on the factual proposition that Born did not hold the operations manager position on the date he was reassigned to the unit manager position or that there was no operations manager vacancy on the date of his reassignment.
 {¶ 26} Relator's argument attempts to insert a totally artificial and unnecessary step into the reassignment process in order to declare that no reassignment could occur. As a practical matter, there was no need for DYS to reinstate Born to an operations manager position in order to reassign him to the unit manager position. Moreover, relator cites to no authority whatsoever to support his argument.
 {¶ 27} Clearly, Born was not rehired by DYS. He was, however, demoted into a lower classification pursuant to the settlement agreement following his discharge. Under R.C. 124.327 and Ohio Adm. Code123:1-41-16(G), DYS, as the appointing authority, was prohibited from hiring or promoting anyone into the unit manager position while relator was on the layoff list. However, DYS was not prohibited from reassigning someone into the unit manager position as Ohio Adm. Code 123:1-41-16(G) provides. Because Born was reassigned to the unit manager position, relator has failed to make his case for the issuance of a writ of mandamus.
 {¶ 28} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.